**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF DELAWARE**

| | |
|---|---|
| CHOON'S DESIGN LLC, a Michigan limited liability company,<br><br>Plaintiff,<br><br>v.<br><br>JOVA US INC, a Delaware corporation,<br><br>Defendant. | C.A. No. _______________<br><br>**DEMAND FOR JURY TRIAL** |

**COMPLAINT FOR PATENT INFRINGEMENT**
**AND DEMAND FOR JURY TRIAL**

Plaintiff Choon's Design LLC ("Choon's Design" or "Plaintiff"), by and through its undersigned counsel, for its Complaint against Defendant JOVA US INC ("Jova" or "Defendant"), alleges as follows:

## NATURE OF THE ACTION

1. This is an action for patent infringement arising under the Patent Act, 35 U.S.C. § 1 *et seq.*, including 35 U.S.C. § 271. Choon's Design, the maker of the famous Rainbow Loom® rubber band crafting kits, brings this action to stop Jova's unlicensed making, importation, offering for sale, and sale of rubber band bracelet-making kits that include a hand-held mini-loom (commonly called a "Y-loom"), together with hooks, clips, and rubber bands, and that infringe United States Patent Nos. 8,899,631 (the "'631 Patent") attached as **Exhibit 1**, and 9,750,317 (the "'317 Patent") attached as **Exhibit 2** (collectively, the "Asserted Patents").

2. Jova sells in the United States its infringing kit, marketed under the "Klever Kits" brand as the "Glow in the Dark Loom Bracelet Making Kit" (Model No. 60270), through at least its "JOVA Direct" storefront on Amazon.com, its "Jova US Inc" storefront on Walmart.com, and

the JOVA brand's website, jovatoys.com. Jova's kit competes directly with Choon's Design's Rainbow Loom® products. Amazon displays Jova's listing alongside genuine Rainbow Loom® products, and at least one purchaser reviewing Jova's kit on Amazon refers to its contents as "Rainbow loom bands."

3. Choon's Design seeks a preliminary and permanent injunction, damages adequate to compensate for Jova's infringement, enhanced damages, attorneys' fees and costs, and pre- and post-judgment interest.

## THE PARTIES

4. Choon's Design is a Michigan limited liability company having its principal place of business at 23660 Research Drive, Suite A, Farmington Hills, Michigan 48335.

5. Upon information and belief, Defendant JOVA US INC is a corporation organized and existing under the laws of the State of Delaware. The records of the Delaware Division of Corporations identify JOVA US INC as a domestic Delaware corporation, File No. 7619808, incorporated on August 11, 2023, with its registered agent, American Business Services Ltd, located at 802 N. West Street, Suite 105, Wilmington, Delaware 19801. A true and correct copy of the Delaware Division of Corporations entity record for Jova is attached as **Exhibit 3**.

6. Jova holds itself out to the public as doing business from 4802 E. Ray Road #23-535, Phoenix, Arizona 85044, the business address shown on its Amazon.com seller profile and printed on the packaging of the Accused Products (defined below), and from 1226 North King Street, No. 434, Wilmington, Delaware 19801, the business address shown on its Walmart.com storefront. Upon information and belief, both addresses are commercial mailbox locations.

7. Upon information and belief, Jova is affiliated with, and operates as part of, the "Joyin" family of toy companies, which includes Joyin US Corp, an Arizona corporation with

offices in Chandler, Arizona and Rancho Cucamonga, California. Joyin US Corp owns United States Trademark Registration No. 7,635,222 for the mark JOVA and, in a January 22, 2026 press release (attached as **Exhibit 4**), described "JOVA" as "the company's core toy brand platform," which "brings together" toy lines including "Klever Kits" — the brand under which the Accused Products are sold. The packaging of the Accused Products identifies Joyin DE Corp GmbH and Joyin UK Corp Limited as Jova's European Union and United Kingdom representatives, and Jova's Walmart.com storefront lists the same customer-service telephone number, (800) 781-3067, that Joyin US Corp lists on its own website.

## JURISDICTION AND VENUE

8. This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. §§ 1331 and 1338(a) because this action arises under the patent laws of the United States, 35 U.S.C. § 1 *et seq.*

9. This Court has general personal jurisdiction over Jova because Jova is incorporated under the laws of the State of Delaware and is therefore "at home" in this State. Jova maintains a registered agent in Delaware and may be served with process through that registered agent. In addition, upon information and belief, Jova has committed acts of patent infringement in this District, including by offering for sale and selling the Accused Products to consumers in Delaware through its fully interactive internet storefronts on Amazon.com and Walmart.com and on the jovatoys.com website (which offers shipping to all 48 contiguous states, including Delaware) and by causing the Accused Products to be shipped into Delaware, and Jova holds out a Wilmington, Delaware business address on its Walmart.com storefront.

10. Venue is proper in this District under 28 U.S.C. § 1400(b) because Jova is incorporated in Delaware and therefore "resides" in this District for purposes of the patent venue statute.

## FACTUAL BACKGROUND

### A. Choon's Design and the Rainbow Loom®

11. In late 2011, Choon's Design introduced its Rainbow Loom® product line (the "Rainbow Loom"), a kit that includes, among other things, a loom designed to be used with rubber bands to form links for bracelets and other items. The Rainbow Loom was an almost immediate success. In an article dated July 19, 2013, attached as **Exhibit 5**, one store owner reported, "We are selling the Rainbow Loom like crazy!" The article also described the Rainbow Loom as "[t]he summer obsession" that was "flying off shelves so quickly that stores can't keep them in stock for long."

12. In 2014, the Toy Industry Association named the Rainbow Loom its "Toy of the Year," as well as its "Activity Toy of the Year," "Girl Toy of the Year," and "Specialty Toy of the Year." A copy of the Toy Industry Association's announcement of the 2014 award winners is attached as **Exhibit 6**.

13. The Rainbow Loom remains a leading brand in its category. The toy-industry trade publication *The Toy Book* has reported that the Rainbow Loom "has become a craft aisle staple with multiple line extensions"; Choon's Design has entered into licensing collaborations with other well-known children's brands; and in September 2026, *The Toy Insider* named two Rainbow Loom® products "Top Holiday Toy" winners. Rainbow Loom® products are sold at retail, including at Michaels, and rank among the best sellers in Amazon.com's "Kids' Jewelry Making Kits" category and carry "Best seller" designations on Walmart.com — the same online

marketplaces through which Jova sells the Accused Products. Copies of these articles, listings, and rankings are attached as **Exhibit 7**.

14. Since its introduction, Choon's Design has sold multiple millions of Rainbow Loom kits in the United States. Rainbow Loom kits include a loom, which is particularly suitable for making rubber band crafts such as bracelets, together with rubber bands, hooks, and clips. Some of the Rainbow Loom kits include a mini-loom, which is also sold individually.

15. The Rainbow Loom's success has attracted numerous copycats that sell knockoff kits that include a mini-loom (frequently a Y-shaped mini-loom known in the marketplace as a "Y-loom"), hooks, rubber bands, and clips, including through Amazon.com and Walmart.com. Choon's Design has spent a great deal of time, effort, and money combating these copycats, including through the litigation described below. Sales of the copycat products are sales that rightfully belong to Choon's Design.

## B. The Asserted Patents

16. Choon's Design owns United States Patent No. 8,899,631, entitled "Brunnian Link Making Device and Kit," which was duly and legally issued by the United States Patent and Trademark Office ("USPTO") on December 2, 2014. The '631 Patent names Cheong Choon Ng as the inventor. A true and correct copy of the '631 Patent, together with its Ex Parte Reexamination Certificate, is attached as **Exhibit 1**.

17. On December 11, 2024, following a reexamination proceeding requested by a third party (Reexamination Control No. 90/019,235), the USPTO issued Ex Parte Reexamination Certificate No. US 8,899,631 C1 for the '631 Patent. The Reexamination Certificate confirmed the patentability of claims 7–19, determined that claims 1, 4, and 20 are patentable as amended, determined that claims 3, 5–6, and 21–24 are patentable, and cancelled claim 2. Unless otherwise

noted, references in this Complaint to the claims of the ’631 Patent are to the claims as they appear in the Reexamination Certificate.

18. Choon’s Design owns United States Patent No. 9,750,317, entitled “Hand Held Link Making Device and Kit,” which was duly and legally issued by the USPTO on September 5, 2017. The ’317 Patent names Cheong Choon Ng as the inventor. A true and correct copy of the ’317 Patent is attached as **Exhibit 2**.

19. Choon’s Design is the owner by assignment of all right, title, and interest in and to each of the Asserted Patents, including the right to sue for and recover damages for past, present, and future infringement.

20. Each of the Asserted Patents is valid, enforceable, and unexpired.

21. The Asserted Patents generally relate to devices and kits for creating an item consisting of a series of links, such as a bracelet, from elastic bands. Each Asserted Patent claims a hand-held “template” — known in the marketplace as a mini-loom — having two spaced-apart pins or posts that hold elastic bands while a hook is used to loop additional bands together to form trinkets such as bracelets. The kits include clips or connectors to secure the ends of the finished item together, as well as hooks.

22. Claim 4 of the ’631 Patent (as amended by the Reexamination Certificate) recites:

> 4. A device for creating an item consisting of a series of links, the device comprising:
>
> a template including at least two pins spaced part from each other, each of the pins including a first end, a base end, and an access groove; and
>
> a bridge portion extending between the base end of each of the pins, wherein the first end includes an outwardly extending flange and each of the access grooves extend entirely through each of the pins including the first end and the base end.

23. Claim 10 of the ’631 Patent recites:

> 10. A kit for creating an item consisting of a series of links, the kit comprising:
>
> a template including at least two pins spaced apart from each other, each of the pins including a first end, a base end, and an access groove; and
>
> at least one clip including inward facing ends for securing ends of the series of links together.

24. Claim 13 of the ’631 Patent depends from claim 10 and adds “a hook for manipulating elastic members relative to each other,” and claim 14 depends from claim 13 and adds “a plurality of elastic members for forming the series of links.” Claim 24 of the ’631 Patent depends from claim 4 and adds “a hook for manipulating elastic links supported on the template during assembly of an item consisting of a series of links.”

25. Claim 20 of the ’631 Patent (as amended by the Reexamination Certificate) recites:

> 20. A kit for creating an item consisting of a series of links, the kit comprising:
>
> a template including at least two pins spaced apart from each other, each of the pins including a first end, a base end, and an access groove; and
>
> at least one clip including inward facing ends for securing ends of the series of links together, wherein the first end includes an outwardly extending flange.

26. Claim 1 of the ’317 Patent recites:

> 1. A kit for creating an item consisting of a series of links, the kit comprising:
>
> a plurality of elastic bands, wherein each of the plurality of elastic bands comprise a closed loop; and
>
> a template including at least two posts spaced apart from each other in a first direction, wherein each of the at least two posts includes a longitudinal channel bounded on three sides, a first tab near a top portion and a second tab near a bottom portion of the at least two posts for holding an elastic band across the at least two posts.

27. Claims 2, 3, and 7 of the ’317 Patent recite:

> 2. The kit as recited in claim 1, including at least one connector for securing an elastic band on one end of series of links to another elastic band on second end of the series of links.
>
> 3. The kit as recited in claim 2, including a base supporting the at least two posts, the base defining an open space between the at least two posts.
>
> 7. The kit as recited in claim 1, including a hook for manipulating elastic bands held between the at least two posts.

28. Rainbow Loom® kits sold by Choon's Design that include a Rainbow Loom® mini-loom and rubber bands bear either patent numbers or a reference to the Rainbow Loom® website (www.RainbowLoom.com), where the patents covering Rainbow Loom® products are listed. Choon's Design maintains a publicly accessible web page, at rainbowloom.com/pages/patents (linked from the footer of its website as "Patents, Trademarks, and Copyrights"), that identifies the patents covering its products, including the '631 Patent and the '317 Patent, and that associates those patents with the specific Rainbow Loom® products that embody them, including the Rainbow Loom® Bracelet Craft Kit, for each of which the page lists both the '631 Patent and the '317 Patent. A copy of that page as it appeared on November 4, 2026 is attached as **Exhibit 8**. Choon's Design seeks damages for the full period permitted under 35 U.S.C. § 287(a). In any event, the filing of this action constitutes notice to Jova of its infringement under 35 U.S.C. § 287(a).

### C. Prior Litigation and Claim Construction Involving the Asserted Patents

29. Choon's Design has repeatedly and successfully enforced the Asserted Patents against sellers of Y-loom bracelet kits in the United States District Court for the Eastern District of Michigan, including in *Choon's Design LLC v. Anhetoy, et al.*, No. 4:22-cv-12963-FKB-APP (E.D. Mich.) (the "*Anhetoy* Action"); *Choon's Design LLC v. Aysum Life, et al.*, No. 4:24-cv-13321-FKB-APP (E.D. Mich.) (the "*Aysum Life* Action"); and *Choon's Design LLC v. AB Creation, et al.*, No. 2:25-cv-14085-FKB-APP (E.D. Mich.) (the "*AB Creation* Action").

30. On February 7, 2025, after full briefing and oral argument, the Honorable F. Kay Behm issued an Opinion and Order Construing Disputed Claim Terms in the *Anhetoy* Action (ECF No. 307) (the "Claim Construction Order"), construing disputed terms of claims 4 and 10 of the '631 Patent. A true and correct copy of the Claim Construction Order is attached as **Exhibit 9**. The court held that:

- "clip including inward facing ends" in Claim 10 of the '631 Patent should be construed to mean "connector with ends that face inward toward where ends of the series of links are kept";
- "base end" in Claims 4 and 10 of the '631 Patent needs no construction and should be given its plain and ordinary meaning;
- "bridge portion" in Claim 4 of the '631 Patent should be construed to mean "a portion that bridges the at least two pins by" extending between the base end of each of the pins;
- "each of the pins including a first end, a base end" in Claims 4 and 10 of the '631 Patent needs no construction and should be given its plain and ordinary meaning; and
- "each of the pins including a first end, a base end, and an access groove" in Claims 4 and 10 of the '631 Patent needs no construction and should be given its plain and ordinary meaning.

**Exhibit 9** at 44–45.

31. In the Claim Construction Order, the court rejected the defendants' proposed constructions that would have limited the claims to exclude the accused Y-shaped mini-loom, observing that the defendants' proposed construction "is tailored to excluding features of the accused Y-shaped mini-loom," and that the Federal Circuit "forbids biasing the claim construction process to exclude or include specific features of the accused product or process." **Exhibit 9** at 41 (internal quotation marks and citation omitted). The court also rejected the defendants' argument that the term "clip including inward facing ends" renders claim 10 indefinite. **Exhibit 9** at 26–27.

32. On February 13, 2026, in the *AB Creation* Action, the court issued an Opinion and Order granting Choon's Design's motion for a temporary restraining order against dozens of online

sellers of Y-loom bracelet kits (ECF No. 10) (the "TRO Opinion"). A true and correct copy of the TRO Opinion is attached as **Exhibit 10**. The court compared claim 4 of the '631 Patent and claim 1 of the '317 Patent to a representative Y-loom and found that "the asserted claims need no construction," that the claim terms "should be given their 'ordinary' meanings in the sense of their common usage and understanding," and that "a reasonable jury applying the commonly understood meanings of the claim terms would likely find that the allegedly infringing features of the accused mini-loom satisfy the claim language." **Exhibit 10** at 27, 30–31.

33. With respect to claim 4 of the '631 Patent, the court explained:

> With respect to Claim 4 of the '631 Patent, the members on the sides of the U-shape satisfy the claim language reciting "at least two pins spaced part [sic] from each other." In relation to the members, the upper projections and the lower projections correspond to the "flanges" and the "bases" of the '631 Patent, and satisfy the claim language reciting "each of the pins including a first end [and] a base end," wherein "the first end includes an outwardly extending flange." Moreover, the coincident portions of the opening correspond to the "access grooves" of the '631 Patent, and satisfy the claim language reciting "each of the pins including … an access groove," wherein "each of the access grooves extend entirely through each of the pins including the first end and the base end." Furthermore, the bridge on the curve of the U-shape corresponds to the recited "bridge portion," and satisfies the claim language reciting "a bridge portion extending between the base end of each of the pins."
>
> **Exhibit 10** at 29–30.

34. With respect to claim 1 of the '317 Patent, the court explained:

> Similarly, with respect to Claim 1 of the '317 Patent, the members on the sides of the U-shape satisfy the claim language reciting "at least two posts spaced apart from each other in a first direction." In relation to the members, the upper projections and the lower projections correspond to the "tabs" of the '317 Patent, and satisfy the claim language reciting wherein "each of the at least two posts includes … a first tab near a top portion and a second tab near a bottom portion of the at least two posts for holding an elastic band across the at least two posts." Moreover, the coincident portions of the opening correspond to "longitudinal channels" of the '317 Patent, and satisfy the claim language reciting wherein "each of the at least two posts includes a longitudinal channel bounded on three sides."
>
> **Exhibit 10** at 30.

35. The court concluded that "Choon's Design has demonstrated a strong likelihood of success on the merits of its patent infringement claims." **Exhibit 10** at 31. The court reached the same conclusion in the *Aysum Life* Action, where it granted a temporary restraining order on April 14, 2025 (ECF No. 16) and a preliminary injunction on June 9, 2025 (ECF No. 44), and, on January 30, 2026, entered default judgment on Choon's Design's patent infringement claims against the remaining defendants, finding that the complaint "establishes liability on Choon's Design's patent infringement claims" for the same reasons the court had previously found a strong likelihood of success — namely, that "a reasonable jury applying the commonly understood meanings of the claim terms would likely find that the accused mini-loom infringes the asserted claims" (ECF No. 54 at 22–23 (quoting ECF No. 16, PageID.628)). In the *Anhetoy* Action, the court entered default judgment and a permanent injunction on August 23, 2024 (ECF Nos. 132, 133), finding that "all the claim 4 elements are found in the Infringing Products" (ECF No. 132 at 5), and on July 7, 2025 entered a consent judgment permanently enjoining a represented defendant from making, using, selling, offering to sell, or importing "kits of one or more Y-looms (a.k.a. mini-looms) and rubber bands" (ECF No. 332 at 2).

36. The Y-looms included in Jova's Accused Products, described and depicted below, are of the same type and configuration as the Y-looms addressed in the Claim Construction Order and the TRO Opinion.

### D. Jova and the Accused Products

37. Jova makes or has made, imports into the United States, offers for sale, and sells in the United States rubber band bracelet-making kits that include at least one Y-loom, together with hooks, clips, and rubber bands, including the kit marketed under the "Klever Kits" brand as the "Glow in the Dark Loom Bracelet Making Kit," Model No. 60270, which Jova sells under at least

UPC 810191350781 and, upon information and belief, UPC 810191352587. That kit, under whatever name, brand, or UPC it is sold, together with any other Jova product that includes a Y-loom or other mini-loom of the same or substantially similar design, whether sold alone or as part of a kit, is referred to in this Complaint as the "Accused Products."

38. Jova offers the Accused Products for sale and sells them on Amazon.com under ASIN B0FMR7Y6HM, with the listing title "JOVA Klever Kits 6000+ PCS Rubber Band Bracelet Kit, Glow in The Dark Loom Bracelet Making Kit, DIY Set, Crafts for Girls Age 7+," at the following URL: https://www.amazon.com/Klever-Kits-Rubber-Bracelet-Making/dp/B0FMR7Y6HM. The listing identifies the seller as "JOVA Direct" (Amazon seller ID A31XXZ7HFH8MS3), identifies the "Manufacturer" as "Jova," and identifies the "Model Number" as 60270. As of October 20, 2026, the listing bore an "Amazon's Choice" designation, reported that "900+" units had been "bought in past month," and displayed 78 customer ratings. A true and correct copy of the Amazon.com listing as it appeared on October 20, 2026 is attached as **Exhibit 11**.

39. The Amazon.com seller profile for "JOVA Direct" identifies the seller's business name as "JOVA US INC" and its business address as 4802 E Ray Rd #23-535, Phoenix, AZ 85044. A true and correct copy of the Amazon.com seller profile for JOVA Direct as it appeared on October 20, 2026 is attached as **Exhibit 12**.

40. Jova also offers the Accused Products for sale and sells them on Walmart.com (Walmart Item No. 19166256234) under the listing title "Klever Kits Glow-in-the-Dark Rubber Band Bracelet Making Kit, 6150+ Piece DIY Loom Craft Set with Organizer Box, Gifts for Girls Ages 7+," "Sold by Jova US Inc" and "Fulfilled by Walmart." Jova's Walmart.com storefront identifies the seller as "Jova US Inc," located at "1226 NORTH KING ST. NUM 434,

WILMINGTON, DE 19801." True and correct copies of the Walmart.com storefront and product listing as they appeared on November 4, 2026 are attached as **Exhibit 13**.

41. Upon information and belief, Jova also offers the Accused Products for sale and sells them directly to consumers in the United States through jovatoys.com, the website of the JOVA toy brand, which bears the notice "© 2026 JOVA Inc. All rights reserved." That website offers the kit under the title "Klever Kits Glow-in-the-Dark Loom Bracelet Kit (6000+ Pcs)," which the page identifies as "item: 60270," for $27.99, at https://jovatoys.com/products/klever-kits-glow-in-the-dark-loom-bracelet-kit-6000-pcs, and the principal product photograph on that page shows two Y-looms in the kit's storage case. The website's shipping policy states that "we ship to the 48 contiguous U.S. states," which include Delaware, and directs customers with shipping questions to call (800) 781-3067 — the same customer-service telephone number that appears on Jova's Walmart.com storefront and on Joyin US Corp's own website (see Paragraph 7). The website's header also displays logos linking to joyin.com, sloosh.com, and lalalark.com. True and correct copies of these pages of jovatoys.com as they appeared on November 4, 2026 are included in **Exhibit 15**.

42. The Accused Products have also been listed for sale in the United States on BestBuy.com under the brand name "Joyfy," with the listing title "Joyfy - Glow-in-the-Dark Rubber Band Bracelet Making Kit, 6150+ Piece DIY Loom Craft Set with Organizer Box, Girls Gifts Ages 7+ - Colorful" (Best Buy SKU 13091323). That listing identifies the product's model number as 60270 — the same model number as the kit Jova sells on Amazon.com — and its UPC as 810191352587. The listing's product description refers to the product as the "Klever Kits Glow-in-the-Dark Loom Kit," and its product images show the same "Klever Kits" packaging as the Accused Products photographed in **Exhibit 14**. Upon information and belief, UPC 810191352587

is the UPC under which Jova sells the Accused Products on Walmart.com (see Paragraph 40), and the BestBuy.com listing was offered through Best Buy's third-party marketplace by Jova's affiliate Joyin US Corp, which sells other "Joyfy"-branded children's craft kits on BestBuy.com under the seller name "Joyin US CORP." As of November 4, 2026, the BestBuy.com listing for the Accused Products stated that the item "is no longer available in new condition." True and correct copies of that listing, and of a BestBuy.com listing for another "Joyfy"-branded craft kit that identifies "Joyin US CORP" as its seller, as they appeared on November 4, 2026, are included in **Exhibit 15**.

43. The Accused Products are also distributed well beyond the channels described above. The same "JOVA Direct" seller account (seller ID A31XXZ7HFH8MS3) through which Jova sells the Accused Products on Amazon.com also offers and sells them on Amazon.ca under the same ASIN, B0FMR7Y6HM, where, as of November 1, 2026, the listing reported that "200+" units had been "bought in past month." The Amazon.ca listing, like an Amazon.in listing for the same ASIN offered by a third-party reseller, identifies the product's manufacturer as "JOVA US INC" and its model number as 60270. The Accused Products are also offered by other third-party online retailers, both to consumers in the United States (for example, bigbotika.com, which offered the kit for $24.99 with free shipping to the United States) and to consumers abroad (for example, noon.com in the United Arab Emirates). The jovatoys.com website, for its part, directs customers shopping from other countries to "our Amazon store" for international shipping. True and correct copies of these listings and pages, as they appeared on November 1, 2026 (the Amazon.ca and Amazon.in pages) and November 4, 2026 (all other pages), are included in **Exhibit 15**.

44. A sample of one of the Accused Products was purchased from Jova through the Amazon.com listing identified above. Photographs of one of the Accused Products and its packaging and contents are attached as **Exhibit 14**. The front of the packaging is shown below:




*Front of the packaging of the Accused Products (Exhibit 14).*

45. The back of the packaging states, among other things, "©2025 JOVA US INC, PHOENIX, AZ 85044, USA," "MANUFACTURED IN NOV. 2025," "MADE IN NINGBO, CHINA," and "BATCH NO. SY60270," and lists the contents of the kit as "100+ C-clips," "10 charms," "30 beads," "5100+ Non-glow rubber bands," "900+ Glow-in-the-dark rubber bands," "33 Glow-in-the-dark letter beads," "2 hooks," "2 loom tools," and "1 storage case." The back of the packaging also identifies "Joyin DE Corp GmbH" as the product's EC representative and "Joyin UK Corp Limited" as its UK representative.




*Back of the packaging of the Accused Products (Exhibit 14).*

46. As purchased, one of the Accused Products contains thousands of closed-loop rubber bands in a compartmented storage case, two Y-looms (the "loom tools" identified on the packaging), two hooks, a bag of clear plastic clips, charms, beads, and a printed instruction sheet:



*Contents of the Accused Products (Exhibit 14).*

**Contents of the Accused Product — rubber bands, templates (Y-looms), hook, and clips**




*Close-up of the Accused Products' rubber bands, Y-looms (templates), hook, and clips, with the components labeled (Exhibit 14).*

47. Each Y-loom in the Accused Products is a single molded plastic part having a handle and, at its working end, two spaced-apart members (the “pins” of the ’631 Patent and the “posts” of the ’317 Patent) connected to one another by a bridge portion. Each member includes an outwardly extending flange (or tab) at its free end and an outwardly extending flange (or tab) at its base end adjacent the bridge portion. Each member is of hollow, half-cylindrical construction, such that a channel or groove, open along the rear face of the member, extends the entire length of the member — through the flange at its free end and the flange at its base end — and continues through the bridge portion. The hook included in the kit is inserted into this channel to reach rubber bands held on the members.



*Rear view of a Y-loom from the Accused Products (Exhibit 14).*

48. The instruction sheet packaged with the Accused Products directs the user, in illustrated step-by-step fashion, to stretch rubber bands across the two members of the Y-loom, to use the hook to loop successive bands through the bands held on the Y-loom so as to form a chain of linked bands, to repeat those steps “to desired length,” and then to “[s]ecure one end with a C-Clip” and “[s]ecure the other end with a C-Clip” to complete a bracelet. The instruction sheet and

the packaging also direct users to "[s]can for 15 tutorial videos" using a QR code, and the Amazon.com listing advertises that the kit "[i]ncludes QR code tutorials and design inspiration to help beginners get started quickly and confidently."



*Instruction sheet packaged with the Accused Products (Exhibit 14).*

49. The Y-loom of the Accused Products satisfies each and every limitation of claim 4 of the '631 Patent. It is a device for creating an item consisting of a series of links (a rubber band bracelet). It includes a template (the Y-loom) having at least two pins (the two members) spaced

apart from each other. Each pin includes a first end (its free end), a base end (its end adjacent the bridge), and an access groove (the channel open along the rear of the member). A bridge portion extends between the base end of each of the pins. The first end of each pin includes an outwardly extending flange, and each access groove extends entirely through each pin, including through the first end and the base end. These elements are identified in the annotated photograph below:

**Accused Y-loom (rear view) — elements of claim 4 of the ’631 Patent**




*Elements of claim 4 of the ’631 Patent identified on the Y-loom of the Accused Products.*

50. The Y-loom of the Accused Products likewise satisfies each and every limitation of claim 1 of the ’631 Patent (as amended by the Reexamination Certificate), which recites a device for creating an item consisting of a series of links comprising “a template including at least two

pins spaced apart from each other, each of the pins including a first end, a base end, an access groove and a bridge portion extending between the base end of each of the pins, wherein the first end includes an outwardly extending flange and is interrupted by the access groove." As described above, each member of the Y-loom includes a first end, a base end, and an access groove; a bridge portion extends between the base ends of the members; and the outwardly extending flange at the first end of each member is interrupted by the access groove, which extends through that flange.

51. The Accused Products also satisfy each and every limitation of claim 24 of the '631 Patent because, in addition to the device of claim 4, they include a hook for manipulating elastic links supported on the template during assembly of an item consisting of a series of links.

52. The Accused Products satisfy each and every limitation of claim 10 of the '631 Patent. Each is a kit for creating an item consisting of a series of links. It includes a template (the Y-loom) having at least two pins spaced apart from each other, each pin including a first end, a base end, and an access groove, as described above. It also includes at least one clip including inward facing ends for securing ends of the series of links together: the clips packaged in the Accused Products, which Jova's packaging and instructions call "C-clips," are connectors with ends that face inward toward where the ends of the series of links are kept, and Jova's instructions direct users to secure each end of the finished bracelet with one of those clips.

53. The Accused Products likewise satisfy each and every limitation of dependent claims 13 and 14 of the '631 Patent because, in addition to the kit of claim 10, they include a hook for manipulating elastic members relative to each other (claim 13) and a plurality of elastic members (rubber bands) for forming the series of links (claim 14). The Accused Products also satisfy each and every limitation of independent claim 20 of the '631 Patent, which recites the

same elements as claim 10 and further requires that the first end of each pin include an outwardly extending flange.

54. The Accused Products satisfy each and every limitation of claim 1 of the ’317 Patent. Each is a kit for creating an item consisting of a series of links. It includes a plurality of elastic bands, each of which comprises a closed loop. It includes a template (the Y-loom) having at least two posts (the two members) spaced apart from each other in a first direction. Each post includes a longitudinal channel bounded on three sides (the half-cylindrical channel open along the rear of the member), a first tab near a top portion of the post (the outwardly extending flange at the free end of the member), and a second tab near a bottom portion of the post (the outwardly extending flange at the base end of the member), for holding an elastic band across the posts. These elements are identified in the annotated photograph below:

**Accused Y-loom (rear view) — elements of claim 1 of the ’317 Patent**




*Elements of claim 1 of the ’317 Patent identified on the Y-loom of the Accused Products.*

55. The Accused Products also satisfy each and every limitation of dependent claims 2, 3, and 7 of the ’317 Patent because, in addition to the kit of claim 1, they include at least one connector (the clips) for securing an elastic band on one end of the series of links to another elastic band on the second end of the series of links (claim 2); a base (the bridge portion and handle of the Y-loom) supporting the two posts and defining an open space between the two posts (claim 3); and a hook for manipulating elastic bands held between the two posts (claim 7).

56. Jova has never been licensed or otherwise authorized by Choon’s Design to make, use, sell, offer for sale, or import any product covered by the Asserted Patents.

57. Jova's Accused Products compete directly with Choon's Design's Rainbow Loom® mini-loom kits, which are sold through many of the same online marketplaces and to the same consumers. Each sale of any of the Accused Products is a sale lost to Choon's Design, and Jova's sales of the Accused Products at prices below those of genuine Rainbow Loom® products erode the prices Choon's Design can charge and damage the goodwill associated with the Rainbow Loom® brand. Choon's Design is being irreparably harmed by Jova's infringement and will continue to be irreparably harmed unless Jova is enjoined.

**E. Jova's Knowledge of the Asserted Patents**

58. Upon information and belief, Jova has known of the Asserted Patents, and has known that the Accused Products infringe them, since before the filing of this Complaint. The Rainbow Loom® products are famous in the toy industry, and Jova's own Amazon.com listing for the Accused Products is displayed alongside genuine Rainbow Loom® products. Rainbow Loom® kits sold by Choon's Design that include a Rainbow Loom® mini-loom and rubber bands bear either patent numbers or a reference to the Rainbow Loom® website (www.RainbowLoom.com), where the patents covering Rainbow Loom® products are listed. Choon's Design publicly identifies the Asserted Patents, and the Rainbow Loom® products that embody them, on its website at rainbowloom.com/pages/patents (**Exhibit 8**). Choon's Design's enforcement of the Asserted Patents against sellers of Y-loom bracelet kits on Amazon.com and Walmart.com — including temporary restraining orders, preliminary injunctions, default judgments, and permanent injunctions entered in the *Anhetoy*, *Aysum Life*, and *AB Creation* Actions between 2022 and 2026 — has been public and widely known among sellers of such products on those marketplaces. Jova is a sophisticated seller affiliated with a large, international toy company that exhibits at major industry trade fairs and that prosecutes and maintains its own trademark registrations before the

USPTO, and Jova and its affiliates sell the Accused Products through multiple channels in the United States and abroad (see Paragraphs 38–43). At a minimum, Jova was willfully blind to the existence of the Asserted Patents and to the infringing nature of the Accused Products.

59. Jova has had actual knowledge of the Asserted Patents and of its infringement of the Asserted Patents at least as of the date of service of this Complaint, and Jova's continued infringement after that date is knowing, deliberate, and willful. Choon's Design reserves the right to amend this Complaint to assert claims for induced and contributory infringement under 35 U.S.C. § 271(b) and (c) as the facts concerning Jova's knowledge and its sales of components and refill products are developed in discovery.

**COUNT I**

**INFRINGEMENT OF THE '631 PATENT (35 U.S.C. § 271(a))**

60. Choon's Design incorporates and re-alleges Paragraphs 1 through 59 as if fully set forth herein.

61. The '631 Patent is valid, enforceable, and unexpired.

62. Jova has directly infringed and continues to directly infringe one or more claims of the '631 Patent, including at least claims 1, 4, 10, 13, 14, 20, and 24, literally or under the doctrine of equivalents, in violation of 35 U.S.C. § 271(a), by making or having made, using, offering for sale, selling, and/or importing into the United States the Accused Products, without license or authority from Choon's Design.

63. As set forth above, the Y-loom included in the Accused Products satisfies each and every limitation of claims 1 and 4 of the '631 Patent, and the Accused Products, which include the Y-loom together with rubber bands, clips, and hooks, satisfy each and every limitation of claims 10, 13, 14, 20, and 24 of the '631 Patent.

64. Jova's acts of infringement have been, and continue to be, willful and deliberate, and Jova's infringement has continued despite Jova's knowledge of the '631 Patent.

65. As a direct and proximate result of Jova's infringement, Choon's Design has suffered and continues to suffer damages in an amount to be determined at trial, but in no event less than a reasonable royalty, and has suffered and will continue to suffer irreparable harm for which there is no adequate remedy at law unless Jova's infringement is enjoined by this Court.

**COUNT II**

**INFRINGEMENT OF THE '317 PATENT (35 U.S.C. § 271(a))**

66. Choon's Design incorporates and re-alleges Paragraphs 1 through 65 as if fully set forth herein.

67. The '317 Patent is valid, enforceable, and unexpired.

68. Jova has directly infringed and continues to directly infringe one or more claims of the '317 Patent, including at least claims 1, 2, 3, and 7, literally or under the doctrine of equivalents, in violation of 35 U.S.C. § 271(a), by making or having made, using, offering for sale, selling, and/or importing into the United States the Accused Products, without license or authority from Choon's Design.

69. As set forth above, the Accused Products — kits including a plurality of closed-loop elastic bands and the Y-loom, together with clips and hooks — satisfy each and every limitation of claims 1, 2, 3, and 7 of the '317 Patent.

70. Jova's acts of infringement have been, and continue to be, willful and deliberate, and Jova's infringement has continued despite Jova's knowledge of the '317 Patent.

71. As a direct and proximate result of Jova's infringement, Choon's Design has suffered and continues to suffer damages in an amount to be determined at trial, but in no event

less than a reasonable royalty, and has suffered and will continue to suffer irreparable harm for which there is no adequate remedy at law unless Jova's infringement is enjoined by this Court.

## PRAYER FOR RELIEF

WHEREFORE, Choon's Design respectfully requests that this Court enter judgment in its favor and against Jova on all counts of this Complaint, and that the Court:

A. Enter judgment that Jova has infringed one or more claims of the '631 Patent;

B. Enter judgment that Jova has infringed one or more claims of the '317 Patent;

C. Enter judgment that Jova's infringement of the '631 Patent and the '317 Patent has been willful;

D. Preliminarily and permanently enjoin Jova and its officers, directors, agents, servants, employees, affiliates, successors, and assigns, and all persons in active concert or participation with any of them, from infringing the '631 Patent and the '317 Patent, pursuant to 35 U.S.C. § 283;

E. Order Jova to deliver up for destruction, or to certify the destruction of, all Accused Products and all materials used in making or promoting them that are in Jova's possession, custody, or control;

F. Award Choon's Design damages adequate to compensate it for Jova's infringement of the '631 Patent and the '317 Patent, in an amount to be determined at trial but in no event less than a reasonable royalty, together with an accounting of all sales of the Accused Products, pursuant to 35 U.S.C. § 284;

G. Award Choon's Design enhanced damages of up to three times the amount of damages found or assessed, pursuant to 35 U.S.C. § 284, on account of Jova's willful infringement;

H. Declare this an exceptional case and award Choon's Design its reasonable attorneys' fees pursuant to 35 U.S.C. § 285;

I. Award Choon's Design its costs and expenses of this action;

J. Award Choon's Design pre-judgment and post-judgment interest on all sums awarded; and

K. Award Choon's Design such other and further relief as the Court deems just and proper.

**DEMAND FOR JURY TRIAL**

Pursuant to Rule 38(b) of the Federal Rules of Civil Procedure, Choon's Design demands a trial by jury on all issues so triable.

Dated: November 11, 2026

Respectfully submitted,

**AMBURN LAW PLLC**

By: /s/ Dean W. Amburn___
Dean W. Amburn (Del. Bar No. 7295)
The Mezz at Michigan Central
2001 15th Street
Detroit, Michigan 48216
Telephone: (313) 612-2111
Mobile: (248) 212-2777
Email: DWA@AmburnLaw.com

*Attorneys for Plaintiff Choon's Design LLC*